UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEBBIE  SUNSHINE, | ) | |
| SUNLAND APPRAISAL SERVICES, | ) | |
| TOWNE MORTGAGE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | 1:15-cv-01374-SEB-DML |
| | ) | |
| vs. | ) | |
| | ) | |
| GENERAL STAR NATIONAL | ) | |
| INSURANCE COMPANY, | ) | |
| NAVIGATORS INSURANCE | ) | |
| COMPANY, | ) | |
| HERBERT H. LANDY INSURANCE | ) | |
| AGENCY INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS TO DISMISS

This matter is before us on Defendants General Star National Insurance Company's, Navigators Insurance Company's, and Herbert H. Landy Insurance Agency's Motions to Dismiss.  [Dkt. Nos. 44, 46, 48.]  Defendants seek to dismiss Plaintiffs Debbie Sunshine, Sunland Appraisal Services, and Towne Mortgage Company's Amended Complaint on the grounds that it fails to state a claim upon which relief can be granted.  For the following reasons, we GRANT Defendants' Motions to Dismiss.

### Background and Facts

Plaintiff Sunland Appraisal Services is a real estate appraisal service owned entirely by Plaintiff Debbie Sunshine ("Sunland").  [Amended Complaint ("Am. Compl.") at ¶ 3.] In late 2008, Sunland was retained by Approved Mortgage Corporation ("Approved") to

perform a Manufactured Home Appraisal Report on behalf of a homeowner who wanted to refinance his mortgage.  [*Id.* at ¶ 7.]  Sunland completed the appraisal and submitted it to Approved on December 2, 2008 (the "Appraisal").  [*Id.* at ¶ 8.]  After the refinancing closed, Approved assigned the mortgage to Towne Mortgage, who later assigned it to Federal National Mortgage Association ("FNMA").  [*Id.* at ¶ 9.]  When the borrower subsequently defaulted on the loan, FNMA performed an investigation and concluded that the Appraisal contained misrepresentations and inaccuracies which lead to an inflated appraisal of the property's value.  [*Id.* at ¶ 10.]  Towne Mortgage then sued Sunland on November 13, 2013 in the Southern District of Indiana (Cause No. 1:13-cv-1796 (the "Underlying Action")) to recover its damages as a result of the inaccurate appraisal.  [*Id.* ¶ 12.]  Towne Mortgage agreed to repurchase the loan for $85,365.28, and we entered a stipulated Judgment against Sunshine and Sunland ("Judgment").  [*Id.* ¶ 26.]  The Judgment, by its terms, is enforceable only against Plaintiffs' liability insurers.  [*Id.*]

On the date Sunland issued the Appraisal, December 2, 2008, Sunland was insured through an errors and omissions professional liability insurance policy from General Star which had a policy period of February 24, 2008 to February 24, 2009 and a retroactive date of February 24, 2006 (the "2008-09 Policy")[1].  [*Id.* at ¶ 16.]  Sunland purchased another insurance policy from General Star for the policy period of February 24, 2009 to February 24, 2010, which also had a retroactive date of February 24, 2006 (the "2009-10 Policy").

---

[1] A retroactive date on a claims-made insurance policy is the date on which coverage begins, meaning that claims based on events that occurred after the retroactive date are covered under the Policy as long as those claims are filed while the policy is in force.

[*Id.*]  At the time the Underlying Action was filed in 2013, Sunland was insured through an errors and omissions insurance policy with Navigators, with a policy period of May 24, 2013 to May 24, 2014 and a retroactivity date of May 24, 2010 (the "Navigators Policy"). [*Id*. at ¶ 17.]  On December 16, 2013, Sunland demanded that General Star and Navigators defend and indemnify it in the Underlying Action.  [*Id.* at ¶ 13.]  Both declined and have refused to pay the Judgment.  [*Id*. at ¶¶ 14-15.]

**General Star Policies**

General Star issued the 2008-09 and 2009-10 Policies (collectively, the "General Star Policies") to Sunshine on a claims-made and reported basis.[2]  The Notice page of 2008-09 Policy states:

> THIS IS A CLAIMS MADE AND REPORTED FORM
> **REAL ESTATE APPRAISERS PROFESSIONAL LIABILITY**
> **INSURANCE POLICY**
> **CLAIMS MADE**
>
> THIS REAL ESTATE APPRAISERS PROFESSIONAL LIABILITY POLICY PROVIDES COVERAGE ON A **CLAIMS-MADE** AND REPORTED BASIS. THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO ONLY THOSE CLAIMS[3] WHICH ARISE FROM PROFESSIONAL SERVICES RENDERED AFTER THE RETROACTIVE

---

[2] Plaintiffs' Amended Complaint fails to attach copies of the relevant policies; instead, Plaintiffs "incorporate by reference" the insurance policies attached to General Star's original Motions to Dismiss.  [Am. Compl., p.6, n. 1.]  Because the policies are incorporated by reference to the Amended Complaint, they may be considered by the court on a motion to dismiss pursuant to Rule 12(b)(6).  *See Dryden v. Sun Life Assur. Co. of Canada*, 737 F. Supp. 1058, 1066 (S.D. Ind. 1989) ("[I]t is well established that material which is attached to, or incorporated by reference in, the plaintiff's complaint may be considered by the Court on a motion to dismiss under Rule 12(b)(6).").

[3] The General Star Policies defines a "claim," in pertinent part, as: "a demand for money, the filing of **Suit** . . . naming the **Insured** and alleging an act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services**."  [2008-09 Policy at p. 9 (emphasis in original); 2009-10 Policy at p. 9) (same).]

DATE STATED IN THE DECLARATIONS PAGE AND WHICH ARE
FIRST MADE AGAINST THE INSURED AND REPORTED TO US
DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED
REPORTING PERIOD.

[2008-09 Policy (emphasis in original).]   Essentially identical language appears on the

Notice page of the 2009-10 Policy.   [*See* 2009-10 Policy at p. 2.]   Each of the Policies

contained a retroactive date of February 24, 2006.   [2008-09 Policy at p. 1; 2009-10 Policy

at p. 2.]

The Insuring Agreement of the 2008-09 Policy provides as follows:

The Company will pay on behalf of the **Insured** all sums which the **Insured**
shall become legally obligated to pay as **Damages** for **Claims** first made
against the **Insured** during the **Policy Period** and first reported to the
Company in writing during the **Policy Period** or within sixty (60) days
thereafter, arising out of any act, error, omission or **Personal Injury** in the
rendering of or failure to render **Professional Services** by an **Insured**
covered under this policy; provided always that such act, error, omission or
**Personal Injury** happens:

A. during the **Policy Period**; or

B. prior to the **Policy Period** provided that:

1. such act, error, omission or **Personal Injury** happened on or after the
Prior Acts Date as indicated on the Declarations Page of this policy; and

2. at the inception of this policy the **Insured** had no reasonable basis to
believe that any **Insured** had breached a professional duty and no
reasonable basis to believe that an act, error or omissions might be
expected to result in a **Claim** or **Suit**.

The Company shall have the right and duty to defend any **Suit** against the
**Insured** seeking **Damages** to which this insurance applies even if any of the
allegations of the **Suit** are groundless, false or fraudulent. However, the
Company shall have no duty to defend the **Insured** against any **Suit** seeking
**Damages** to which this insurance does not apply.

4

[2008-09 Policy at p. 4 (emphasis in original).]  The Insuring Agreement of the 2009-10 Policy is substantively identical.  [2009-10 Policy at p. 4.]

**Navigators Policy**

Navigators issued Real Estate Appraisers Errors and Omissions Insurance Policy No. PH13RAL109044IV to Sunshine (as Named Insured) and to Sunland (by endorsement) for the policy period from May 24, 2013 to May 24, 2014, with a retroactive date of May 24, 2010 (the "Navigators Policy").  [Navigators Policy at p. 1.]  The Navigators Policy provides in relevant part:

> The Company will pay on behalf of the Named Insured all sums in excess of the deductible that the Named Insured becomes legally obligated to pay as damages and claim expenses as a result of a claim first made against the Named Insured and reported in writing [to Navigators] during the policy period … by reason of an act or omission … in the performance of a professional service by the Named Insured, provided that:
>
> 1. No such act or omissions, or related act or omission, was committed prior to the retroactive date [May 24, 2010].

[*Id*. at p. 2.]

On July 23, 2015, Plaintiffs filed a complaint against Defendants contending that Defendants breached the Policies and committed several torts in connection with the Underlying Lawsuit.  [Dkt. No. 1.]  On October 6, 2015, Defendants each filed a Motion to Dismiss the original Complaint on various grounds, including failure to state a claim upon which relief can be granted, much like their currently-pending motions to dismiss. [Dkt. Nos. 28, 30, 32.]  In lieu of filing a response to Defendants' Motions to Dismiss, Plaintiffs filed an Amended Complaint.  [Dkt. No. 39.]

In the Amended Complaint, Plaintiffs assert causes of action against Navigators and General Star for Breach of Contract (Count I), Illusory Coverage (Count II), Failure to Act in Good Faith or Engage in Fair Dealing (Count III), and violation of the Crime Victim's Relief Act (Count IV).  [Am. Compl. at ¶¶ 30-56.]  Plaintiffs also bring the following claims against Defendant Landy:  Breach of Contract (Count V), Failure to Act in Good Faith and Engage in Fair Dealing (Count VI), Negligence (Count VII), and violation of the Crime Victim's Relief Act (Count VIII).  [Am. Compl. ¶¶ 57-68.]  Plaintiffs seek relief in the amount of the Judgment, as well as treble and punitive damages, attorneys' fees, and costs.  [*Id.* at p. 13.]  Defendants filed motions seeking dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that it fails to state a claim upon which relief can be granted.

### Standard of Review[4]

Defendants' 12(b)(6) Motion to Dismiss requires the Court to accept as true all well-pled factual allegations in the Amended Complaint and draw all ensuing inferences in favor of the non-movant.  *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).  Nevertheless, the Amended Complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations [must] raise a right to relief above the speculative level."  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted).  The Amended Complaint must therefore include "enough facts

---

[4] Plaintiffs repeatedly refer to the "Indiana law requiring all pleaded facts to be treated as true and all inferences to be drawn in favor of the plaintiff."  [*See, e.g.,* Dkt. No. 52 at 9.]  The Federal Rules of Civil Procedure apply to claims filed in federal court, not the Indiana trial rules.  *See* Fed. R. Civ. P. 1.

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2).  A facially plausible complaint is one which permits "the court to draw the reasonable inference that that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Analysis**

**A.    Claims Against General Star and Navigators**

This case is an insurance coverage dispute, pure and simple.  Plaintiffs contend that their Policies with General Star and Navigators included coverage for the claim asserted against them on November 13, 2013 related to a December 2, 2008 Appraisal which they timely reported on December 16, 2013.   According to Plaintiffs, General Star's and Navigators's refusals to defend and indemnify Sunland constitute a breach of contract, bad faith, and a violation of the Crime Victims Relief Act, and thus, they are entitled damages. If Defendants are to be believed, say Plaintiffs, that the insurance policies at issue do not provide coverage for the Loss, the coverage is illusory and Plaintiffs are entitled to damages.

**1.    Insurance Coverage (Breach of Contract – Count I)**

In Count I of their Amended Complaint, Plaintiffs allege as follows:

31.    General Star and Navigators breached their contracts/policies for insurance with Sunland by not providing a defense and coverage for the claim made by Towne Mortgage with respect to the Duncan mortgage.

[Am. Compl. ¶ 31.]  Defendants argue that the Amended Complaint fails to state a claim upon which relief can be granted on the grounds that the plain language of the Policies excludes the Loss.

It is well established that under Indiana law, an insurance policy is a contract between the insurer and the insured and is subject to the same rules of interpretation as other contracts. *Caliber One Indem. Co. v. O & M Const. Co.*, No. 1:04-CV-00417-LJM-VS, 2004 WL 2538646, at *3 (S.D. Ind. Sept. 29, 2004) (citing *Ind. Funeral Dir. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 654 (7th Cir. 2003)). As the Indiana Supreme Court has held, "Where the contract is plain and its meaning clear, the court will not change its evident meaning, by rules of construction, and thereby make a new contract for the parties." *Id.* (citing *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 669 (Ind. 1997) (*quoting Firemen's Ins. Co. v. Temple Laundry Co.,* 144 N.E. 838, 839 (Ind. 1924))). "If no ambiguity exists, the policy will not be interpreted to provide greater coverage than the parties bargained for." *Id.* (citing *Huntzinger v. Hastings Mut. Ins. Co.,* 143 F.3d 203, 209 (7th Cir. 1998); *see also Earl v. Am. State Preferred Ins. Co.,* 744 N.E.2d 1025, 1027 (Ind. Ct. App .2001)). Neither party argues that the Policies are ambiguous. In such situations, we determine and apply the meaning of the contract as a matter of law. *McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000).

The December 2, 2008 Appraisal was conducted during the General Star 2008-09 Policy coverage period. The claim at issue was made (and notice was given) during the Navigators Policy period. According to General Star and Navigators, their respective policies do not cover the Loss because each of the Policies requires three events to trigger coverage: (1) the service was provided during the policy period; (2) the claim was made during the policy period; and (3) notice was provided to the insurer during the policy period. All three of these requirements are necessary for coverage and all three of these

requirements are not present under either the General Star Policies or the Navigators Policy.  Defendants argue that requirements 2 and 3 were not satisfied and thus the Appraisal and Underlying Action are not covered by the terms of any Policy.  Plaintiffs' breach of contract claim does not state a claim upon which relief can be granted and should be dismissed, according to Defendants.

Plaintiffs' response to Defendants' motions to dismiss falls short, limited as it is to a mere recitation of blackletter law that an insurer's duty to defend is broader than its duty to indemnify and an argument that the provided insurance coverage was illusory (which is address separately below).  Plaintiffs have failed to demonstrate an entitlement to relief because the facts alleged in the Amended Complaint do not and cannot support a breach of contract claim against General Star or Navigators.  It is clear that under the General Star Policies, the covered service was provided during the policy period but the *claim was not made* during the policy period and *notice was not provided* during the policy period.  Under the Navigators Policy, the *service was not provided* during the policy period, although the claim was made and notice was given during the policy period.

Similarly, Plaintiffs do not offer an explanation for their assertion that the nature of the allegations in the Underlying Action triggered General Star's or Navigators's duty to defend.  Indeed, the facts alleged in the Underlying Action dictate our conclusion herein, to wit, that no insurance coverage existed for the Loss.  *See Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 198 (Ind. Ct. App. 2005) ("We determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation."); *Knight v. Indiana Ins. Co.*,

9

871 N.E.2d 357 (Ind. Ct. App. 2007) (holding that if it is revealed that a claim is clearly excluded under the policy, then no defense is required).

Plaintiffs are unable to state a claim for breach of contract because the plain language of the Policies provide no coverage under the underlying facts, and it would be futile therefore to permit Plaintiffs to amend their complaint a third time. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citing *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994)) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile."). Accordingly, we GRANT WITH PREJUDICE Defendants' Motion to Dismiss Count I of Plaintiffs' Amended Complaint.

### 2.    Illusory Coverage (Count II)

A "claim" for illusory coverage is not recognized under Indiana law. An argument that insurance coverage is illusory is a defense to the enforcement of a provision in an insurance policy that would deny coverage of a claim. [Dkt. No. 49 at 9.] We thus construe Plaintiffs' illusory coverage claim as an alternative theory: that the Policies provided coverage for the Loss if the "limitations and exclusions on both the front and back end of these annual policies . . . requir[ing] that the claim *both* occur and be asserted during the one year policy period" were not enforced. And they should not be. [Am. Compl. Count II; *id.* ¶ 33.]

They should not be enforced, according to Plaintiffs, because the Policies' requirement that appraisal activities be performed and a claim related thereto be made and reported within a single 12-month period renders the Policies "basically valueless," since Sunland "would not recover benefits under any reasonably expected set of circumstances."

[Am. Comp. ¶¶ 34, 39.]  Plaintiffs' argument demonstrates a misunderstanding of the Policies' coverage and limitations.  The Policies do not require that the purported wrongful acts occur within the one-year policy period *and* that a claim related to those wrongful acts be made and reported during that same one-year policy period.  As explained above, both General Star Policies include a retroactive date of February 24, 2006, which means that the 2008-09 Policy covered claims related to appraisals made during a period of three years, and the 2009-10 Policy insured such claims during a period of four years for claims made and reported by February 24, 2006.  The 2013-2014 Navigators Policy included a retroactive date of May 24, 2010, which means that the Navigators Policy covered appraisals conducted over a period of *four* years when claims were made and reported by May 24, 2014.

Plaintiffs concede in their briefing that the claim period is three (or four) years (and not one year as they allege in the Amended Complaint), which concession undermines their contention that the coverage is illusory because it requires that the appraisal, sale of the home, and discovery of the alleged negligence must occur in *one* year.  [*Compare* Dkt. No. 51 at 6 ("Defendant's Policies required an occurrence to transpire within a three year window (the one year policy period and the two years preceding it), . . . .") *with* Am. Compl. ¶ 33 (claiming the coverage was illusory because they "required that the claim *both* occur and be asserted during the one year policy period" (emphasis in original)).] Plaintiffs' argument that the Policies provide illusory coverage hinges on a one-year claims-made policy period, which is simply not what the Policies provide.

"An insurance provision is considered illusory if 'a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances.'" *Schwartz v. State Farm Mut. Auto. Ins. Co*., 174 F.3d 875, 879 (7th Cir. 1999) (quoting *Fidelity & Guaranty Ins. Underwriters, Inc. v. Everett I. Brown Co.,* 25 F.3d 484, 490 (7th Cir. 1994)) ("Because the under-insured provision at issue insures at least one risk, we agree with the district court that it is not illusory.").   "If a provision covers some risk reasonably anticipated by the parties, it is not illusory."  *Id.* (citing *City of Lawrence v. Western World Ins. Co.,* 626 N.E.2d 477, 480 (Ind. Ct. App. 1993)); *see also Meridian Mut. Ins. Co. v. Richie*, 544 N.E.2d 488, 489 (Ind. 1989) (holding that the insured could have benefited from his insurance coverage and thus the policy was not illusory).

It is entirely conceivable, for example, that Sunland could have benefitted from the Policies for an appraisal conducted in March, 2006 for which a claim was made in January, 2010.  Here, the parties could reasonably have expected that circumstances would arise under which General Star or Navigators would pay benefits.  [*See* Dkt. No. 45 at 10-11; Dkt. No. 49 at 10-11; Dkt. No. 55 at 6.]  Indeed, Plaintiffs contend that General Star knew its policy "would not cover the *vast majority* of claims made," implicitly conceding that *some claims* would be covered.  [*See* Dkt. No. 51 at 5 (emphasis added).]  Because it is possible to conceive of a risk reasonably anticipated by the parties (and Plaintiffs concede as much), the coverage provided by the Policies was not illusory.

Claims-made policies are not inherently violative of public policy.  They typically are used when providing coverage in the context of professional liability insurance.  [*See* Dkt. No. 45 at 12 (string cite evidencing the typicality of claims-made professional liability

12

policies); Dkt. No. 57 at 6 (same).]   "A typical claims-made policy covers acts and omissions occurring either before or during the policy period; for prior acts, the policy may provide full retroactive coverage or it may only cover claims arising out of acts and omissions after the 'retroactive date' specified in the declarations." *Medical Protective Co. v. Kim*, 507 F.3d 1076, 1082 (7th Cir. 2007).   "Insurers issuing claims-made policies 'protect themselves against liability for old occurrences by including a 'retroactive date' specifying the earliest occurrence to be covered, no matter when the claim is made." *Id.* Judge Posner writing for the Seventh Circuit highlights the justification for claims-made policies, explaining that such policies are neither exploitive nor illusory:

> Whereas an *occurrence* policy protects the insured against the financial consequences of an accident or other liability-creating event that occurs during the policy period, no matter when the claim is made—it might be many years later—a *claims-made* policy protects the insured against the financial consequences of a legal claim asserted against him during the policy period.  Given that there must be some interval between a wrongful act and the claim arising out of it, a claims-made policy might *seem* illusory if its coverage were confined to claims made during the policy period arising out of wrongs also committed during that period *and* the period was extremely short. Yet there would be nothing exploitive about such limited coverage if the insurance premium were correspondingly small, and in fact it is commonplace for issuers of claims-made policies to limit retroactive coverage by specifying a cut-off date, such as the date of the first claims-made policy issued by the insurer to this insured, so that claims based on occurrences before that date are excluded from coverage. For protection against old occurrences the insured must look to his occurrence policies. Claims-made policies that lack retroactive coverage are attractive mainly to new entities, such as Richards' corporation, or young professionals just beginning their careers. They don't need retroactive coverage.

*Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 790 (7th Cir. 1992) (emphasis in original) (citations omitted) (holding that a one-year policy period under those circumstances was not "extremely short").  Plaintiffs make no argument here that the three-

or four-year Policy periods were "extremely short."  The circumstances of their case fall in line with the reasoning in *Ashland Oil*; indeed, the premium paid for the 2008-09 General Star Policy was a mere $590 (insuring claims over three years and providing $1,000,000 of coverage for each claim).[5]

The fact that the Policies did not cover the loss at issue here does not establish that they did not insure against some other risk reasonably anticipated by the parties.  Thus, we hold that the Policies do not provide illusory coverage and Defendants' Motions to Dismiss are GRANTED WITH PREJUDICE.

### 3.    Bad Faith and Deception Claims (Counts III and IV)

Plaintiffs also plead claims for bad faith and deception against General Star and Navigators.  As explained further below, those claims repeat Plaintiffs' illusory coverage claim, which we have now dismissed with prejudice.  Plaintiffs have also failed to plead the requisite specificity with regard to these claims to satisfy the heightened pleading standards.

The Amended Complaint avers that General Star and Navigators failed to act in good faith "when they offered their policies of insurance for sale to Sunland knowing that the coverage they provided was only illusory in nature" and "by refusing to provide a defense and by not seeking a declaratory judgment" in violation of their duties to defend

---

[5] General Star argues that the two-year retroactive coverage period is particularly appropriate considering Indiana's adoption of a two-year statute of limitations for professional negligence actions.  [Dkt. No. 57 at 7-8.]  Although not affecting the outcome of its Motion, we are not persuaded by General Star's argument because the statute of limitations period on such claims does not accrue until the plaintiff knows or has reason to know of the claim.  *See Groce v. Am. Fam. Mut. Ins. Co.*, 5 N.E.3d 1154, 1156 (Ind. 2014).

and/or indemnify.  [Am. Compl. ¶¶ 47-48.]  Plaintiffs contend that these failures were done "out of malice, fraud, gross negligence and/or oppressiveness."  [*Id.* ¶ 49.]  According to Plaintiffs, General Star and Navigators engaged in deception, a violation of Ind. Code § 35-43-5-3, by making false and misleading representations regarding the Policies, which afforded only illusory coverage that they could not discover until a claim was made against the Policies.  [Am. Comp. Count IV.]

Plaintiffs' breach of good faith and fair dealing claim is more typically referred to as a claim of bad faith.  *See H.E. McGonigal Inc. v. Harleysville Lake States Ins. Co.*, 2015 WL 6459129 (S.D. Ind. Oct. 26, 2015) (holding that a policyholder may bring a "claim for bad faith when an insurer breaches its duty of good faith and fair dealing").  Insured's claims for bad faith can arise in a variety of contexts including an insurer's unfounded refusal or delay in payment of policy proceeds, deceiving the insured, or exercising an unfair advantage to pressure the insured to settle the claim.  *See Jackson v. Allstate Ins. Co.*, 780 F. Supp. 2d 781, 791 (S.D. Ind. 2011).  "[T]o determine whether [the insurer] breached the covenant of good faith and fair dealing necessarily requires that the factfinder determine whether it wrongfully denied coverage".  *HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.*, 831 N.E.2d 259, 264-65 (Ind. Ct. App. 2005).  Because we have concluded above that Plaintiffs' breach of contract claim fails on the grounds that the Policies do not provide coverage for the Loss, Plaintiffs' claim for breach of good faith and fair dealing also fails on this basis.

Indiana's criminal deception statute, Ind. Code § 35-43-5-3, is "premised upon a course of fraudulent conduct" and depends on "averments of fraud," and implicates the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Newland N. Am. Foods, Inc. v. Zentis N. Am. Operating, LLC*, No. 2:13-CV-074, 2013 WL 1870652, at *3 (N.D. Ind. May 3, 2013) (citing *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir.2007); *Heartland Recreational Vehicles, LLC v. Forest River, Inc.,* 2009 WL 1085837, at * 1 (N.D. Ind. Apr. 22, 2009) ("[T]he heightened pleading standards of Fed. R. Civ. P. 9(b) govern Forest River's claim of [Indiana criminal] deception."). Likewise, Plaintiffs' allegations that General Star and Navigators breached their duties of good faith and fair dealing with "malice, fraud, gross negligence and oppressiveness" trigger Rule 9(b)'s heightened pleading requirements, which require "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1038 (N.D. Ill. 2003).

Plaintiffs' Counts III and IV miss this mark in pleading fraud with specificity by a wide margin.  The Amended Complaint lacks "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id*.[6]  Consequently, we GRANT WITHOUT PREJUDICE Defendants' Motion to Dismiss Counts III and IV of

---

[6] General Star argues that the statute of limitations bars Plaintiffs' claims for violation of the Crime Victims Relief Act and breach of a duty of good faith and fair dealing.  [Dkt. No. 45 at 15-16.] Because Plaintiffs' claim omits so many operative facts, we are unable to determine at this time whether the statute of limitations bars those claims.  It would be premature at this stage of the litigation to dismiss based on the statute of limitations; however, General Star is not foreclosed of making this argument in response to any amended pleading.

Plaintiffs' Amended Complaint. We caution Plaintiffs, however, that should they attempt another iteration of these claims, it must contain the necessary specificity to satisfy Fed. R. Civ. P. 9(b), to wit, the specifics of who, where, and when of the alleged deception and bad faith.

**B.    Claims Against Landy**

**1.    Breach of Contract – Landy (Count V)**

In Count V of their Complaint, Plaintiffs allege as follows:

58.    Landy breached the contract it had with Sunland to provide E&O insurance when Landy failed to procure insurance that would cover claims related to older appraisals, such as the 2008 Duncan appraisal. These representations were made with the intent to induce Sunland to purchase the policies, thus depriving Sunland of property: namely, premium payments and cause[d] injury, loss and damages to the Plaintiffs.

Landy has moved to dismiss Count V of Plaintiffs' Amended Complaint on the grounds that it does not "assert any allegations to establish the necessary elements of a contract, such as an offer, acceptance, consideration, or a meeting of the minds between Plaintiffs and Landy." [Dkt. No. 47 at 12.] Landy confuses the elements of a *contract* with the elements of a *breach* of contract *claim*, inaccurately summarizing Indiana law. [*See* Dkt. No. 47 at 12 (citing *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011) for the proposition that "offer, acceptance, consideration, and a meeting of the minds" are "essential elements of a breach of contract claim" when *Sands* explains those

elements prove the existence of a *contract*, not a breach thereof).][7]  Landy argues that a "policy was issued through an agent does not establish the necessary terms of a contract, or that a contract existed, between the insured and the agent." [Dkt. No. 56 at 9 (citing an Indiana Supreme Court decision on summary judgment).]  These arguments challenge the viability of Plaintiffs' claims, not whether the claim is plausible under the facts that we must accept as true for purposes of a motion to dismiss.

Frustratingly, Plaintiffs take Landy's bait, referencing the elements of a contract and relying on the Policies as evidence of consideration.  Explaining that Landy was a specialist, providing professional malpractice insurance for real estate appraisers and that Sunland relied on that expertise, Plaintiffs reach outside the Amended Complaint in an attempt to protect their claim from dismissal.  Their Response does more harm than good in arguing that an implied contract existed based on the course of dealings between the parties, a theory and claim not alleged in the Amended Complaint.  [Dkt. No. 53 at 9-10.]

---

[7] Relying on *Illinois* law, Landy argues that the "necessary elements of a contract [are] offer, acceptance, consideration, [and] a meeting of the minds between Plaintiffs and Landy."  [Dkt. No. 47 at 13 (citing *Burke v. Lakin Law Firm, PC*, No. 07-CV-0076-MJR, 2008 WL 64521, at *2 (S.D. Ill. Jan. 3, 2008) (Under Illinois law the essential elements of a breach of contract claim are: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.)).  As even the most inexperienced lawyer should know, state contract law does not travel from state-to-state and Indiana law applies here, which Landy acknowledges elsewhere in its briefing.  With a modicum of effort, Landy's counsel would have discovered that in Indiana, "[t]he essential elements of a breach of contract claim are 'the existence of a contract, the defendant's breach thereof, and damages,'" to wit, elements far fewer and more narrow than those required by Illinois law.  *See Auto-Owners Ins. Co. v. C&J Real Estate, Inc.*, 996 N.E.2d 803, 805 (Ind. Ct. App. 2013) (citation omitted).  We assume that Landy's reliance on inapplicable law is the product of careless lawyering; however, Landy's counsel comes dangerously close to conduct violative of Fed. R. Civ. P. 11.  Counsel is cautioned to take greater care in future filings and representations to the court.

Plaintiffs' breach of contract claim is at best inartfully pleaded (mixing breach of contract allegations with fraud allegations) and, when coupled with their Response to Landy's Motion to Dismiss (throwing an implied contract theory into the mix), we are left scratching our heads.

Although the Amended Complaint may have provided a plausible theory for holding Landy liable for Plaintiffs' alleged lack of sufficient insurance coverage, Plaintiffs' Response has muddied the waters such that an opportunity to replead a breach of contract claim is warranted.   Accordingly, Landy's Motion to Dismiss Count V is GRANTED WITHOUT PREJUDICE.

### 2.    Good Faith and Fair Dealing (Count VI)

Plaintiffs allege a claim for breach of good faith and fair dealing against Landy as follows:

> 25.   Landy is an agency that identifies itself as specializing in providing professional malpractice insurance, including for real estate appraisers.  On its website it says that it is a  "proud partner of [National Association for Independent Fee Appraisers] for Exceptional E&O  Coverage for Members throughout the United States."  The Sunland Plaintiffs relied upon this professed expertise of Landy in selecting the type of insurance coverage and insurance products fashioning coverage for the appraisal work performed by them.
>
> . . .
>
> 60. Landy neither acted in good faith nor engaged in fair dealing when the company misled and misadvised Sunland as to the true nature and extent of the coverage offered by the General Star and Navigators policies. Landy failed to disclose that the coverage provided was only illusory in nature and would not meet the reasonable expectations of the Sunland Plaintiffs that the E & O insurance it had purchased would cover claims such as those made by Towne Mortgage.

61. Landy's failure to act in good faith and engage in fair dealing was done out of malice, fraud, gross negligence and oppressiveness, and was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or some other human failing.

The crux of Plaintiffs' claim is that Landy failed to inform Sunland that the Policies would not provide the coverage Sunland expected.  Landy contends that Plaintiffs' claim for breach of the duty of good faith and fair dealing is barred by a two-year statute of limitations that began to run when plaintiff knew or, in the exercise of ordinary diligence could have discovered that an injury had been sustained, which, in these circumstances, was the date each Policy issued.  [Dkt. No. 47 at 6-7 (citing *Catt ex rel. Skeans v. Affirmative Ins. Co.*, 2009 WL 2175986 (N.D. Ind. July 21, 2009)).]  Plaintiffs did not respond to Landy's statute of limitations defense other than to say that "[d]ue to the dense, complicated and adhesive [sic] nature of the language found in the Defendant's [sic] policies, Plaintiffs could have not known of or discovered the illusory coverage."  [Dkt. No. 53 at 6.]

In Indiana, an insured has a duty to read his insurance policy.  *Groce*, 5 N.E.3d at 1157.  The Indiana Supreme Court has held that if the alleged shortcoming in an insurance policy is "readily ascertainable from the policy itself", then the statute of limitations begins to run immediately when the policy goes into effect.  *Id.* (citing *Filip v. Block*, 879 N.E.2d 1076 (Ind. 2008)).  Despite the Policies' clear language that coverage is limited to claims made and reported during the policy period (or 60 days thereafter) for professional services rendered during the policy period, Plaintiffs nonetheless allege that Landy misled Sunland as to the nature and extent of the coverage afforded by the Policies.  The alleged

shortcomings in the Policies could, however, be ascertained from the Policies themselves. Because each of the Policies was issued more than two years prior to the filing of the lawsuit, the statute of limitations may likely bar a claim of bad faith.

An exception exists, however, to the above-stated rule. "[R]easonable reliance upon an agent's representations can override an insured's duty to read the policy." *Filip*, 879 N.E.2d at 1084 (quoting *Vill. Furniture, Inc. v. Assoc. Ins. Managers, Inc.,* 541 N.E.2d 306, 308 (Ind.Ct.App.1989)). "In general, this exception negates an insured's duty to read part of the policy if an agent insists that a particular hazard will be covered." *Id.* ("If the agent insists to the prospective purchaser that the policy will insure against a hazard . . . that the prospect is particularly concerned about, and the hazard materializes, the company may be estopped to plead the terms of the policy because the strength of the agent's oral assurances lulled the prospect into not reading, or reading inattentively, dense and rebarbative policy language."). Here, the Amended Complaint is silent as to the specific conversations Sunland had with Landy about the scope of coverage requested and that which was provided; however, Plaintiffs allege that Landy counseled them on their insurance needs and tailored insurance coverage for appraisers [*see* Am. Compl. ¶ 64]. At this procedural junction, it would be premature for us to forever foreclose any and all breach of good faith and fair dealing claims simply because Plaintiffs did not attempt to address or otherwise defuse a potential statute of limitations defense. *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (holding that on a motion to dismiss, we look not at whether plaintiffs' complaint forecloses all legal defenses, but rather,

21

whether the allegations in the complaint include "enough facts to state a claim to relief that is plausible on its face.").

Landy also argues that Count VI must be dismissed on the grounds that Indiana does not impose a duty of good faith and fair dealing on an independent insurance agent. Arguing that it owes no duty of good faith and fair dealing, Landy again cites to cases outside this jurisdiction, including decisions from the Courts of Appeals in California and South Carolina, which briefing error is compounded by the fact that they espouse results that are contrary to the law in Indiana. [*See* Dkt. No. 47 at 8.] The law in Indiana provides: "All insurance agents who undertake to procure coverage owe their clients a general duty of reasonable care and skill in obtaining insurance and following their clients' instructions." *Indiana Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 264 (Ind. 2015). We therefore reject Landy's argument that it had no duty of good faith and fair dealing with respect to Plaintiffs.

Similar to the defense advanced by General Star and Navigators, Landy challenges the sufficiency of Plaintiffs' pleading of bad faith because the Amended Complaint contains nothing more than bare legal conclusions that do not meet the heightened pleading standards. [*See* Dkt. No. 47 at 8-10.] Like their claim against General Star and Navigators, Plaintiffs fail to identify relevant facts, such as who misled Sunland, when and where, and what was said. We reach the same conclusion here as above – that the claim should be dismissed without prejudice for failure to provide the requisite specificity. Plaintiffs' argument, however, that "[g]reater specificity could be provided if Landy would provide discovery and fully disclose the nature of its dealings with the Sunland Plaintiffs" [Dkt.

No. 53 at 7] suggests that Plaintiffs may not be able to provide the requisite detail to properly plead a bad faith claim, but we will not, at this time, foreclose Plaintiffs an attempt to do so.

For the foregoing reasons, we GRANT WITHOUT PREJUDICE Landy's Motion to Dismiss Count VI.

### 3.     Crime Victim's Relief Act (Count VIII)

Plaintiffs allege that Landy violated the Crime Victim's Relief Act:

67. Under IC 34-24-3-1, a person who proves the elements of certain crimes, including those contained in IC 35-43 et seq., by a preponderance of the evidence, can recover up to three times the actual damages, the costs of the action, and reasonable attorney's fees.

68. Landy engaged in deception, a violation of IC 35-43-5-3, by claiming on its website to offer "Exceptional E&O Coverage" for appraisers, and by misleading Sunland in omitting critical information about the purchase of E&O insurance policies that failed to cover foreseeable claims and which offered only illusory coverage. These representations were made with the intent to induce Sunland to purchase the policies, thus depriving Sunland of property, namely premium payments, and cause injury, loss and damages to the Plaintiffs.

As with the Crime Victims Relief Act claim against General Star and Navigators that we dismissed without prejudice previously, this claim lacks the requisite specificity to survive a motion to dismiss, to wit, allegations regarding who made the misrepresentation, what that representation was, and when it was made.  "Rule 9(b) requires particularity when pleading 'fraud or mistake,'" which is absent from Plaintiffs' allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009); Fed. R. Civ. P. 9(b).  For this reason, we dismiss Plaintiffs' claim asserting a violation of the Crime Victims Relief Act against Landy.

Landy moves to dismiss Plaintiffs' Crime Victims Relief Act claim for a second reason, arguing that the claim is barred by the two-year statute of limitations. We repeat our view that it would be premature to grant a motion on this basis, given that Plaintiffs have failed to plead with the specificity required to state such a claim. For all of these reasons, we GRANT WITHOUT PREJUDICE Landy's Motion to Dismiss Plaintiffs' Violation of the Crime Victims Relief Act.

### 4.    Negligence (Count VIII)

Plaintiffs' final claim is for negligence. Count VIII of their Amended Complaint alleges:

> 64. Landy acted as an agent to obtain insurance for the Plaintiffs and owed them a duty to exercise reasonable care, skill, and good faith diligence in obtaining insurance. The Plaintiffs had a long term relationship with Landy and Landy exercised broad discretion in serving the Plaintiffs' needs and in counseling them concerning insurance tailored to the needs of appraisers. Landy received compensation for procuring this insurance and providing their expert advice in this area.

> 65. Landy breached that duty when it failed to notify Sunland of exceptions and limitations to these policies, which would exclude coverage for new claims made on old appraisals, such as was asserted by Towne Mortgage, and that the coverage was illusory.

Although Plaintiffs' negligence claim is far from clear, we infer, based on their response to Landy's Motion to Dismiss, that Plaintiffs are alleging that Landy failed to procure adequate coverage. [Dkt. No. 53 at 8 (citing *Indiana Restorative Dentistry*, 27 N.E.3d 260 for the proposition that agents may be liable for negligence when they fail to procure insurance requested by the insured).] Plaintiffs concede that a negligence claim

under Indiana law is subject to a two-year statute of limitations.  *See* Ind. Code § 34-11-2-4.

The statute of limitations a claim for inadequate coverage begins from the start of the coverage.  *Filip*, 879 N.E.2d at 1083-84.  As explained above, the alleged inadequacies of the Policies were ascertainable simply by reading the Polices.  Because Plaintiffs' claims were filed more than two years from the dates the Policies were issued, a negligence claim based on a failure to procure adequate coverage is barred by the statute of limitations.[8]  Thus, we GRANT WITH PREJUDICE Landy's Motion to Dismiss Plaintiffs' Negligence claim.

## Conclusion

For the foregoing reasons, we GRANT Defendants' Motions to Dismiss as follows: Counts I, II, III, and VIII are DISMISSED WITH PREJUDICE.  Counts IV, V, and VI are DISMISSED WITHOUT PREJUDICE.

Date:   9/26/2016

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[8] Plaintiffs hint at a fraudulent concealment defense to this time bar; however, they fail to explain how knowledge of their claim was fraudulently concealed by Landy.  [Dkt. No. 83 at 8-9.]  In fact, Plaintiffs' response consists simply of quotes from case and statutory law, without explanation as to how those laws are applicable to the case before us.

Distribution:

GOODIN ABERNATHY LLP
Andrew Bentley Janutolo
ajanutolo@goodinabernathy.com
Robert D. Zink
rzink@goodinabernathy.com

HINKHOUSE WILLIAMS WALSH LLP
Joseph A. Hinkhouse
jhinkhouse@hww-law.com
Kaitlin  Calov
kcalov@hww-law.com
Phillip K. Beth
pbeth@hww-law.com

WILFORD CONRAD LLP
Anthony D. Ingraffia
aingraffia@wilfordconrad.com
Christopher T. Conrad
cconrad@wilfordconrad.com
David A. Wilford
dwilford@wilfordconrad.com

YOSHA COOK & TISCH
Richard A. Cook
rcook@yoshalaw.com